UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAURICE WALLACE,

        Plaintiff,

    v.

CARL MILLER, *et al.*,

        Defendants.

Case No. 09-cv-342-JPG

### MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 33) of Magistrate Judge Donald G. Wilkerson recommending that the Court deny plaintiff Maurice Wallace's motion for a temporary restraining order and a preliminary injunction (Doc. 7). Wallace has objected to the Report (Doc. 35). At the Court's request, the defendants responded to Wallace's motion after the Report was filed (Doc. 49), and Wallace has replied to that response (Doc. 52).

**I.    Report and Recommendation Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    History**

Wallace, an inmate at Tamms Correctional Center ("Tamms"), brought this case because he believes prison personnel are impermissibly preventing him from observing his religious

(Satmar Hasidic Judaism) diet, customs, dress and worship in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* (Count 1).  He also believes the diet he is being given is nutritionally insufficient in violation of the Eighth Amendment (Count 2) and that prison personnel are retaliating against him for filing grievances about the foregoing (Count 3).

In his motion for a temporary restraining order and a preliminary injunction, Wallace asks the Court to force the defendants to allow him to use his new Jewish name instead of his given name, to provide kosher, prepackaged food for Wallace's consumption on the Sabbath, and to allow him to observe Jewish customs and rites such as, for example, wearing a yarmulke and other clothing items, performing benedictions, wearing a beard and earlocks and observing the Sabbath, holidays and fasting dates.

The Report found that Wallace had not carried his burden of showing he would suffer irreparable harm absent preliminary injunctive relief.  Wallace objects to the Report, noting that between November 2007 and May 2008, he lost 75 pounds because of an allegedly insufficient diet.

In response to Wallace's motion and after the issuance of the Report, the defendants provided evidence that Tamms is providing Wallace a kosher diet approved by a Jewish rabbi. They also state that Wallace has the ability to obtain a yarmulke and other religious items but that he has failed to use the correct procedure to request them and that, consequently, no defendant has prevented him from wearing the items.  The defendants also noted that Wallace is not prevented from performing benedictions in his cell or from growing a beard and earlocks as long as they satisfy institutional security requirements designed to prevent hiding contraband. He is also not required to work, write or do physical activity on the Sabbath or to eat food

prepared by Jews on the Sabbath. The defendants note that state law prevents Wallace from changing his name. The defendants note that all the requests Wallace has made using Tamms' institutional policies for dietary modifications for fasting days have been granted. Finally, the defendants note that dreidels are not allowed at Tamms because they have sharp points and can be used as weapons. Tamms' policies, the defendants contend, are designed to achieve orderly administration of the dietary system and prevent the flow of contraband in the prison.

In his reply, Wallace argues that he would suffer greater harm by not having his motion granted than Tamms would suffer by being forced to accede to his religious practice requests. He again points to his weight loss as evidence of irreparable harm. Wallace also argues that he has made the appropriate requests for religious items but has been refused, and without those items he cannot perform benedictions. However, his exhibits attached to his reply demonstrate he has requested the items *free of charge*, and that request was denied because the items are not free to inmates. He also argues that the food Tamms supplies him on the Sabbath does not meet his religious requirements even though it was not prepared by Jewish workers. He also challenges the defendants' assessment of a dreidel as a potential weapon and notes that other potential weapons such as pens and eyeglasses are provided to inmates.

**III.    Analysis**

Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Fin. Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). A party seeking a preliminary injunction must make a threshold showing that (1) it has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if the injunction is not granted. *Ferrell v. United States Dep't of Housing & Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). If

the moving party is able to establish these three factors, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public.  "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Ferrell*, 186 F.3d at 811; *accord Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).  "A preliminary injunction is an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Chicago Dist. Council of Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam));  *accord Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008).  When deciding a motion for temporary injunction, the Court applies the same standard as it does to a motion for a preliminary injunction.  *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1083 (C.D. Ill. 2001).

      The Court questions the Report's conclusion that, even if Wallace's claims may have merit, he will not suffer irreparable harm while this case is pending.  *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest."); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[T]he denial of a plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily.").  However, regardless of the existence of irreparable harm, because the Court believes Wallace does not have a likelihood of success on the merits, it will deny his motion for a temporary restraining order and a preliminary injunction (Doc. 7).

A.  First Amendment

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *accord O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (regulation impacting practice of religion). This is because prison administrators, not courts, are in the best position to make judgments concerning institutional operations. *Turner*, 482 U.S. at 89.

To establish a constitutional violation, the prisoner must show that the restriction substantially burdens the exercise of a constitutional right. *Nelson v. Miller*, 570 F.3d 868, 877 (7th Cir. 2009); *see, e.g., Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) (requirements that diet be compelled be religion and verified by clergy can create substantial burden). A substantial burden exists when there is "'substantial pressure on an adherent to modify his behavior and violate his beliefs.'" *Koger*, 523 F.3d at 799 (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Once the prisoner makes this showing, the Court must then determine whether a restriction is reasonable by examining (1) whether there is a valid, rational connection between the prison regulation and the government interest offered to justify the regulation, (2) whether there are alternative means of exercising the right upon which the regulation infringes, (3) the extent of the impact accommodating the constitutional right would have on the guards, inmates and institutional resources and (4) whether there is an absence of a ready alternative to the regulation. *Turner.* at 89-91.

With respect to the kosher meals Wallace desires on the Sabbath, a prison's failure to provide an inmate food that complies with his religious dietary restrictions may violate an inmate's First Amendment right to the free exercise of his religion (applicable to the states by the Fourteenth Amendment). *See Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990) (prisoner

5

alleged he was faced with choice between adequate nutrition and observing tenets of his belief). Nevertheless, a prison is not required to accommodate every element of an individual prisoner's religious diet so long as the prison accommodates the dietary needs shared by a significant number of prisoners. *See Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988), *cited with approval in Hunafa*, 907 F.2d at 47-48; *Johnson v. Horn*, 150 F.3d 276, 283 (3d Cir. 1998) (First Amendment requires only that Jewish inmates be served meals that are kosher and nutritious), *overruled on other grounds by DeHart v. Horn*, 227 F.3d 47 (3d Cir. 2000). For example, providing a diet that is acceptable as kosher to most Jews is sufficient:

> The first amendment does not require prisons to accommodate every element of each inmate's faith; there are so many variations that the enterprise would be both costly and unavailing (for perfect implementation cannot be assured at any costs). It also would open the system to abuse, for prisoners might make "religious" demands motivated more by matters of taste than matters of faith.

*Andreola v. Wisconsin*, 171 Fed. App'x 514, 515-16 (7th Cir. 2006). Here, Wallace is receiving meals most Jews would consider kosher. Therefore he is unlikely to be able to show his exercise of his Jewish faith is substantially burdened.

With respect to the religious clothing and most other religious items, there is no evidence the defendants are preventing Wallace from obtaining those items and thereby substantially burdening his free exercise of his religion. The evidence shows he cannot get them because he cannot afford them, not because of any of the defendants.

With respect to the observance of Sabbath, holidays and fasting days, the evidence shows that the defendants have honored every properly made request Wallace has made, and Wallace has made no allegation that the request process poses a substantial burden. Thus, Wallace is unlikely to show that he has been substantially burdened in the practice of his religion in this respect.

With respect to performance of benedictions, there is absolutely no evidence that the defendants are doing anything that would impair Wallace's ability to perform those religious rites. To the extent he cannot perform them without the religious garb he desires, as noted above, it is Wallace's poverty, not the defendants' actions that create such a barrier.

As for prison regulations forbidding Wallace from possessing a dreidel or wearing a long beard or earlocks, those regulations appear to be valid and rationally connected to the prison's interest in preventing weapons and other contraband from being passed in prison. Furthermore, there is no indication that a dreidel and excessively long beards or earlocks are essential to Wallace's practice of his religion such that forbidding them puts substantial pressure on Wallace to modify his beliefs. Accommodating Wallace's requests for exceptions to the rules, and potentially those of various other inmates of various other religions, has the potential to complicate and compromise security at Tamms without substantially increasing the inmates' ability to practice their religions. Wallace has not shown that he has any likelihood of showing those regulations are unreasonable under *Turner*.

As for the defendants' failure to allow Wallace to use his Jewish name instead of his given name, that regulation too is reasonably connected to maintaining order and security at Tamms. Allowing inmates to change names whenever they become followers of a different religion, as inmates not infrequently do after the soul-searching that generally comes with the stresses of prison life, would unnecessarily confuse and complicate prison administration and threaten institutional order. Furthermore, nothing forbids Wallace from using a new name informally so long as prison records and prison interactions use his given name. Wallace has not shown that he has any likelihood of showing the defendants' acts in relation to his name are unreasonable under *Turner*.

B.     RLUIPA Claim

RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Thus, to prevail on a RLUIPA claim, a prisoner must first show that the prison is imposing a substantial burden on the exercise of his religious rights, even if it is by rule of general applicability. To avoid liability, the government may then show that the prison's actions are in furtherance of a compelling government interest and are the least restrictive means of furthering that interest. *See Nelson v. Miller*, 570 F.3d 868, 877 (7th Cir. 2009); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).

The Court has explained above why the defendants' failure to provide Wallace with the kosher diet he wants, religious clothing and other religious items and their conduct in relation to Wallace's observance of Sabbath, holidays and fasting days and in relation to his performance of benedictions do not substantially burden Wallace's exercise of his religion. Thus, it is unlikely Wallace can satisfy his burden under RLUIPA. *See Nelson*, 570 F.3d at 877 (First Amendment and RLUIPA "substantial burden" tests are interpreted the same way).

As for the prison regulations forbidding Wallace from possessing a dreidel, wearing a long beard or earlocks and changing his name, to the extent they substantially burden Wallace's exercise of his religion and for the reasons discussed above, it is unlikely that the evidence will show that those regulations are excessively restrictive for furthering the compelling state interest in promoting institutional safety and security. Preventing a potential weapon – or an item that

can be fashioned into one – from entering a prison is certainly a compelling state interest, and the restrictions on beards and earlocks are narrowly tailored only to prohibit beards and earlocks in which contraband can be hidden.

    C.    <u>Eighth Amendment Claim</u>

The Eighth Amendment requires a prisoner's diet to contain adequate nutrition. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009); *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). A prison official can be liable for an insufficient diet if the prisoner shows he faced an objectively serious risk of harm and the official was deliberately indifferent to that risk. *Mays*, 575 F.3d at 648.

Here, there is evidence that Wallace lost a tremendous amount of weight in a relatively short period of time. He has not presented any evidence, however, that his weight loss was because the kosher diet provided to him was nutritionally insufficient. It appears that he may not have eaten enough of the food given to him for a variety of reasons, including that it did not meet his particular faith requirements that went beyond those of most Jews. There is simply no evidence suggesting that the kosher diet given to Wallace was nutritionally insufficient. The Court thinks success on this claim is highly unlikely.

**IV.**    **Conclusion**

The Court **REJECTS** the reasoning of the Report (Doc. 33). However, because Wallace has not shown he has a likelihood of success on the merits, the Court **DENIES** his motion for a temporary restraining order and a preliminary injunction (Doc. 7) for the reasons in this order.

**IT IS SO ORDERED.**
**DATED:  July 20, 2010**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**