UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE WALLACE,<br><br>          Plaintiff,<br><br>     v.<br><br>CARL MILLER, *et al.*,<br><br>          Defendants. | Case No. 09-cv-342-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 190) of Magistrate Judge Philip M. Frazier recommending that the Court grant in part and deny in part the defendants' motions for summary judgment (Docs. 158, 160 & 162) and deny the plaintiff's motion for partial summary judgment (Doc. 164).   The parties have objected to the Report (Docs. 193 & 194) and have responded to the opposing parties' objections (Docs. 198 & 199).

**I.     Report and Recommendation Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3).   The Court must review *de novo* the portions of the report to which objections are made. *Id.*   "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    History**

The Report sets for a detailed description of the relevant facts and evidence in this case, so the Court will only touch generally on the basics and only to the extent necessary to frame its rulings.   Plaintiff Maurice Wallace was an inmate at Tamms Correctional Center ("Tamms") at all

relevant times. He was transferred to Menard Correctional Center ("Menard") in preparation for the Illinois Department of Corrections' ("IDOC") closure of Tamms in 2013. He brought this case because he believes various Tamms personnel interfered with the free exercise of his religion (Satmar Hasidic Judaism), retaliated against him for filing grievances and this lawsuit, deprived him of sufficient nutrition within his religious dietary restrictions, and treated him differently than other inmates because of his religion. He further believes the defendant supervisors are liable for the wrongful conduct of their subordinates. The Report adequately describes the five counts of Wallace's complaint.

**III.     Analysis**

The Report addressed each pending summary judgment motion separately, and the Court finds it convenient to address the objections in the same fashion.

    A.     <u>Motion by Ford, Houston, Moore and Osman (Doc. 158)</u>

These defendants participated in reviewing Wallace's complaints and grievances about other defendants' failure to accommodate Wallace's religious practice. Wallace claims these defendants failed to adhere to prison grievance review procedures when investigating and making recommendations regarding his complaints.

        1.     <u>Count 1</u>

Magistrate Judge Frazier found that these defendants were not personally involved in any infringement on Wallace's free exercise of his religion because they did not cause or participate in the alleged violations. Magistrate Judge Frazier found that, at the most, these defendants were negligent in any duty they may have had to detect and remedy constitutional violations. Furthermore, he found that the defendants were entitled to qualified immunity from damages because it was not clearly established at the time of their conduct that merely processing or

responding to a grievance amounted to a constitutional violation based on an underlying constitutional violation set forth in the grievance. Wallace objects, arguing that the evidence allows an inference of deliberate indifference along the same lines as a "failure to intervene" claim.

After a *de novo* review of the issues, the Court agrees with Magistrate Judge Frazier's conclusion. No evidence suggests these defendants were involved in the underlying decisions that impacted Wallace's ability to exercise his religion. "[I]f the defendants were not involved in the underlying harm, the mishandling of an inmate grievance alone cannot be a basis for liability under § 1983." *Montanez v. Feinerman*, 439 Fed. App'x 545, 547-48 (7th Cir. 2011) (citing *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007)). Furthermore, no evidence suggests that these defendants actually knew at the time that their colleagues' conduct violated Wallace's First Amendment rights. Additionally, these defendants are entitled to qualified immunity from claims for money damages because Wallace has not pointed to any caselaw in existence at the relevant time from which a reasonable officer in their positions would have known that their treatment of Wallace's grievances violated the constitution.

Magistrate Judge Frazier further found that Wallace's claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq., which only provides for injunctive relief, are moot because of Wallace's transfer to Menard and the closure of Tamms. Wallace objects, arguing that the defendants may be employed at Menard or another institution to which he may be transferred, so he still may be exposed to them.

Again, after a *de novo* review, the Court agrees with Magistrate Judge Frazier. Transfer of a prisoner to a another institution renders a prisoner's request for injunctive relief against officials

at the first prison moot unless he makes a showing that he will likely be retransferred to that first institution. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Here, there is no possibility that Wallace will be transferred back to Tamms since the institution has closed, and any suggestion that the defendants may have further contact with him elsewhere and continue the same offensive conduct is pure speculation.

Magistrate Judge Frazier found that the Illinois Court of Claims has exclusive jurisdiction over claims under the Illinois Religious Freedom Restoration Act ("IRFRA")*,* 775 ILCS 35/1 *et seq.*, so Wallace's IRFRA claim should be dismissed without prejudice. No party objects to this conclusion, and the Court finds it is not clearly erroneous.

   2. <u>Count 2</u>

Magistrate Judge Frazier found these defendants did not present sufficient evidence of the absence of retaliation to warrant summary judgment, although Wallace's claims for injunctive relief were mooted by his transfer to Menard. The defendants object that Magistrate Judge Frazier failed to consider the application of qualified immunity to this claim.

After *de novo* review, the Court agrees with Magistrate Judge Frazier. While these defendants have pointed to a lack of evidence of their personal involvement in denying religious accommodation as alleged in Count 1, a reasonable jury could find they were personally involved in processing certain grievances adversely to Wallace in retaliation for his filing of other grievances. Furthermore, the Court has carefully reviewed the motion for summary judgment and agrees that these defendants did not raise the issue of qualified immunity with respect to Count 2 in their motion.

   3. <u>Count 4</u>

Magistrate Judge Frazier found no evidence that Houston intentionally discriminated

against Wallace and others of his faith on the basis of their religion. No party objects to this conclusion, and the Court finds it is not clearly erroneous.

      B.      <u>Motion by Dillon, Johnson and Lambert (Doc. 160)</u>

Johnson was the warden and Dillon and Lambert were assistant wardens at Tamms during Wallace's incarceration there. Wallace claims that Johnson and Dillon were responsible for failing to accommodate his religious practice in a variety of ways, that Dillon retaliated against him by failing to help him obtain a proper diet and clothing, that Lambert retaliated against him through an undesirable cell assignment, that Johnson intentionally discriminated against Wallace because of his Jewish sect, and that all three are liable for their subordinates' constitutional violations.

      1.      <u>Count 1</u>

Magistrate Judge Frazier found that Dillon had not presented sufficient evidence of the relevant factors to determine whether the restrictions imposed on Wallace were justified. No party objects to this conclusion, and the Court finds it is not clearly erroneous.

Magistrate Judge Frazier found that Johnson was not personally involved in an infringement on Wallace's free exercise of his religion because she did not cause or participate in the alleged violations. Wallace objects, arguing that Johnson was responsible for the day-to-day operations of the prisons and knew of some of the restrictions on Wallace.

After *de novo* review, the Court agrees with Magistrate Judge Frazier. To be liable, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (internal quotations and citations omitted). While Johnson was generally

5

responsible for the provision of a kosher diet to Jewish inmates, decisions about specific foods that fit into that diet were made by someone else.   No evidence shows she actually knew the kosher diet was lacking and then knowingly or with deliberate, reckless indifference refused to do anything about it.   As for law library access and medications provided to inmates, decisions regarding those matters were also left to other prison personnel.   Johnson is not responsible for any of those decisions that might have violated Wallace's First Amendment rights simply because she was generally in charge of day-to-day prison operations.

Magistrate Judge Frazier again recommended that Wallace's RLUIPA claim against these defendants be dismissed as moot, and the Court agrees for the reasons discussed in conjunction with the summary judgment motion filed by Ford, Houston, Moore and Osman.

No party objects to Magistrate Judge Frazier's recommendation that Wallace's IRFRA claim against these defendants be dismissed without prejudice, and that recommendation is not clearly erroneous.

    2.    <u>Count 2</u>

Magistrate Judge Frazier found that there was no evidence Lambert's decision regarding cell assignment was in any way in retaliation for the exercise of a First Amendment right and that Dillon was not responsible for decisions regarding Wallace's diet.   Wallace objects on the basis that Lambert and Dillon did not prove the absence of a retaliatory motive for their actions.

After *de novo* review, the Court agrees with Magistrate Judge Frazier.   It is Wallace's initial burden to point to evidence that retaliation was a motivating factor in the defendants' conduct.   *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).   Only then does the burden shift to the defendants to show the harm Wallace suffered would have occurred anyway even without the retaliatory motive.   *Id.*   Here, Wallace has pointed to no evidence that retaliation was

6

a motivating factor for Lambert's limited input into determining the cell assignment about which Wallace complains. As for Dillon, for the same reasons the Court found Johnson had no personal involvement in deciding the details of Wallace's kosher diet it finds Dillon, who occasionally filled in as chief administrative officer when Johnson was away from the institution, also had no personal involvement. Furthermore, there is no evidence that Wallace's grievances or lawsuits were a motivating factor for Dillon's conduct in this regard.

    3.    <u>Count 4</u>

With respect to Wallace's equal protection claim against Johnson, Magistrate Judge Frazier found no evidence from which a reasonable jury could find intentional, invidious discrimination against Wallace on the basis of his religion. Wallace objects on the grounds that Johnson, as the person responsible for the day-to-day operations of the prison, had a responsibility to correct unconstitutional discrimination perpetrated by staff members in charge of making decisions about Wallace's religious accommodations.

After *de novo* review, the Court agrees with Magistrate Judge Frazier that Wallace has not pointed to any evidence of intentional, invidious discrimination by Johnson simply because she generally oversaw the prison and failed to correct potential wrongdoing of other staff members.

    4.    <u>Count 5</u>

Finally, Magistrate Judge Frazier found that there was no evidence Johnson, Lambert or Dillon facilitated, condones or approved of a deprivation of Wallace's constitutional rights such that they could be held liable for those deprivations as supervisors of the wrongdoers. Wallace objects, arguing that since Johnson, Lambert and Dillon knew of their subordinates unconstitutional conduct, they are liable for that conduct.

After *de novo* review, the Court agrees with Magistrate Judge Frazier that there is no

evidence these defendants either knew that the actions of their subordinates were violating Wallace's constitutional rights and then knowingly or with deliberate, reckless indifference failed to correct that wrongdoing.

        5.      Qualified Immunity

No party objects to Magistrate Judge Frazier's recommendation that Johnson, Lambert and Dillon have not established their entitlement to qualified immunity, and that recommendation is not clearly erroneous.

        C.      Motion by Sullivan, Griswold and Miller (Doc. 162) and
                  Motion by Wallace (Doc. 164)

Sullivan was the dietary services manager at Tamms at all relevant times. She was responsible for seeing that Wallace was served meals during his periods of fasting and for providing him a kosher diet. Miller was the senior chaplain at Tamms and handled all requests for religious accommodations. Griswold is an IDOC dietician who directs food service operations at prisons statewide. She is responsible for creating an IDOC master menu but does not decide menus for special accommodations, such as kosher menus, at individual prisons.

        1.      Count 1

Magistrate Judge Frazier found that Sullivan did not substantially burden Wallace's exercise of his religion by failing to provide two full meals after sundown on his fast days, although she may have provided one meal that was larger than normal. He noted Wallace was still able to fast during the day and eat more than one normal meal after sunset, that this happened only 6 or 7 times a year, and that no evidence tied any adverse health consequences to the failure to provide a full second meal on these occasions. Wallace objects, noting that Sullivan offers no legitimate justification for the refusal to provide a second full meal.

After *de novo* review, the Court agrees with Magistrate Judge Frazier. It is Wallace's

initial burden to show Sullivan substantially burdened his practice of religion. Only then is Sullivan required to justify her decisions. A "substantial burden" is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable," *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003) (RLUIPA context), or that puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981). The Court agrees with Magistrate Judge Frazier that no reasonable jury could find Wallace was substantially burdened in his exercise of religion because he did not get a second full meal on his fast days. First, no evidence establishes that Wallace sincerely believed that eating three full meals is required by his faith, and in his deposition he does not include that practice as one of the tenets of his religious belief. Second, to the extent the failure to provide a third full meals deprived Wallace of some nutrition, the deprivation was minor and occurred for only a few days a year, not all of which were in a row. No reasonable jury could conclude that such a minor deprivation of limited duration put substantial pressure on Wallace to modify his behavior and violate his beliefs. Since Wallace did not show a substantial burden on his religious practice, the burden did not shift to Sullivan to justify her actions.

Magistrate Judge Frazier found that there was a genuine issue of material fact regarding whether Wallace's practice of religion was substantially burdened by the purportedly kosher diet Sullivan provided him. No party objects to this recommendation, and the Court finds it is not clearly erroneous.

Magistrate Judge Frazier further found that there was a genuine issue of material fact regarding whether Wallace's practice of religion was substantially burdened by Miller's treatment of his accommodation requests and whether that treatment was justified. Wallace objects,

9

arguing that he is entitled to summary judgment on this claim. The Court has reviewed the matter *de novo* and finds that there are genuine issues of material fact that preclude summary judgment for either party.

Magistrate Judge Frazier found that Griswold was not personally involved in specific meal planning at any institution. Wallace objects that she was in charge of planning, directing and controlling prison meals statewide.

After *de novo* review, the Court agrees with Magistrate Judge Frazier. Griswold's involvement was at a much higher level than meal planning decisions at any particular institution, including how religious needs for a kosher diet would be accommodated. She cannot be vicariously liable for Sullivan's decisions about how to accommodate Wallace's religious dietary needs.

Magistrate Judge Frazier again recommended that Wallace's RLUIPA claim be dismissed as moot, and the Court agrees for the reasons discussed in conjunction with the summary judgment motion filed by Ford, Houston, Moore and Osman.

No party objects to Magistrate Judge Frazier's recommendation that Wallace's IRFRA claim be dismissed without prejudice, and that recommendation is not clearly erroneous.

    2.    <u>Count 2</u>

Magistrate Judge Frazier found no evidence that Sullivan or Miller acted in retaliation for Wallace's exercise of his First Amendment rights. Wallace objects, arguing that the defendants are not allowed to rely on factors other than Wallace's sincere religious beliefs and that suspicious timing leads to a causal inference.

After *de novo* review, the Court agrees with Magistrate Judge Frazier. Wallace's first objection is misplaced in that it applies to a failure to accommodate rather than a retaliation claim.

In a retaliation claim, he must point to facts from which a reasonable jury could find the defendants relied on *his First Amendment activities*, not his religious beliefs or some other factor.  There is no such evidence in the record.  As to his timing argument, the Court has reviewed the evidence and finds that the timing is not so suspicious that a reasonable jury could infer Sullivan and Miller made their decisions based on Wallace's First Amendment activity, especially where they have offered legitimate reasons for their actions other than that activity.

    3.    <u>Count 3</u>

Magistrate Judge Frazier found no evidence that Sullivan or Griswold knew that Wallace was not being provided adequate nutrition in his kosher meals and was deliberately indifferent to that need.  Wallace objects on the grounds that he was deprived of nutrition and suffered medical problems as a consequence.

After *de novo* review, the Court agrees with Magistrate Judge Frazier.  To be liable under the Eighth Amendment, a prison official must know of risk to an inmate's health or safety and disregard it by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001).  There is no evidence Sullivan or Griswold was actually aware of any deficient nutritional content of the kosher diet provided to Wallace or that either of them was deliberately indifferent to any shortcomings.

    4.    <u>Count 4</u>

With respect to Wallace's equal protection claim against Sullivan and Miller, Magistrate Judge Frazier found no evidence from which a reasonable jury could find intentional, invidious discrimination against Wallace on the basis of his religion.  Wallace objects on the grounds that they treated him differently than they treated other Jews at Tamms.

After *de novo* review, the Court agrees with Magistrate Judge Frazier that Wallace has not

pointed to any evidence of intentional, invidious discrimination by Sullivan and Miller with respect to Wallace's diet or other religious accommodation requests.

     5.     <u>Qualified Immunity</u>

No party objects to Magistrate Judge Frazier's recommendation that Sullivan, Griswold and Miller have not established their entitlement to qualified immunity, and that recommendation is not clearly erroneous.

## IV. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report in its entirety (Doc. 190);

- **GRANTS in part** and **DENIES in part** the defendants' motions for summary judgment (Docs. 158, 160 & 162);

- **DENIES** the plaintiff's motion for partial summary judgment (Doc. 164);

- **GRANTS** summary judgment as follows:
    - in favor of defendants Ford, Houston, Moore, Osman, Johnson and Griswold on the First Amendment free exercise claim in Count 1;
    - in favor of defendant Sullivan on the First Amendment claim in Count 1 to the extent it complains of failing to provide two meals after sunset on fasting days;
    - in favor of defendants Dillon, Lambert, Sullivan and Miller on the First Amendment retaliation claim in Count 2;
    - in favor of defendants Sullivan and Griswold on the Eighth Amendment claim in Count 3;
    - in favor of defendant Houston, Johnson, Sullivan and Miller on the Fourteenth Amendment equal protection claim in Count 4;
    - in favor of Dillon, Johnson and Lambert on the supervisory liability claim in Count 5;

- **DISMISSES as moot** Wallace's RLUIPA claim in Count 1;

- **DISMISSES without prejudice** for lack of jurisdiction Wallace's IRFRA claim in Count 1; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

Defendants Johnson, Lambert and Griswold are terminated from this case. The following claims

remain for trial:

- First Amendment free exercise claim in Count 1 for damages against Sullivan, to the extent it complains of the failure to provide kosher meals;

- First Amendment free exercise claim in Count 1 for damages against Miller and Dillon; and

- First Amendment retaliation claim in Count 2 for damages against Ford, Houston, Moore and Osman.

The Court further **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Frazier's chambers on or before March 14, 2014.

**IT IS SO ORDERED.**
**DATED:   February 12, 2014**

                                       s/J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **DISTRICT JUDGE**